IN THE CIRCUIT COURT
FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| HIVEY C. BROOKS<br>3704 RAVENWOOD AVENUE<br>BALTIMORE, MARYLAND 21218<br><br>*on his own behalf and on behalf of*<br>*all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>CONDOR CAPITAL CORP.<br>800 SOUTH OYSTER BAY ROAD<br>HICKSVILLE, NEW YORK 11802<br>   Serve On: State Department of Assessments<br>            and Taxation<br>            Corporate Charter Division<br>            301 W. Preston St., Room 801<br>            Baltimore, MD 21201<br><br>Defendant. | CLASS ACTION COMPLAINT<br><br>FILED<br>JAN 7 2010<br>CIRCUIT COURT FOR<br>BALTIMORE CITY<br><br>Case No. _____ |

## CLASS ACTION COMPLAINT

Plaintiff Hivey C. Brooks ("Named Plaintiff" or "Brooks"), on his own behalf and on behalf of all others similarly situated, through his attorneys Cory L. Zajdel, Esq. and Z LAW, LLC, hereby submits this Class Action Complaint against Defendant Condor Capital Corporation ("Condor Capital") and for support states as follows:

I.  **PRELIMINARY STATEMENT**

1. Brooks institutes this class action against Condor Capital on his own behalf and on behalf of all others similarly situated for violating statutory, common law and contractual

1

EXHIBIT A

obligations and seeks to recover actual damages, statutory damages, interest, attorney fees, and the costs of this action against Condor Capital for multiple violations of Maryland's Credit Grantor Closed End Credit Provisions, Md. Code Ann., Comm. Law §§ 12-1001 *et seq.* ("CLEC"), Maryland's Consumer Protection Act, Md. Code Ann., Comm. Law, §§ 13-101 *et seq.* ("CPA") and Maryland Common Law.

2. Condor Capital extends secured automobile financing to many borrowers in Maryland each year.

3. Each financing contract elects CLEC as the governing law of the financing contract.

4. Because Condor Capital offers sub-prime loans that are mainly issued at a stated simple interest rate above ten percent (10%), many borrowers fall behind on their loans, which inevitably leads to repossession of the secured property.

5. Each year, Condor Capital repossesses a large number of motor vehicles that originated from CLEC contract. In the event its customer fails to reinstate the contract or redeem the vehicle following repossession, Condor Capital sells the customer's vehicle and applies the proceeds toward the balance on the customer's account. In most cases, the sum Condor Capital obtains for these vehicles is not sufficient to pay off its customer's motor vehicle loan, resulting in a deficiency balance.

6. Condor Capital's routine business practice is to never send notices prior to the repossession ("pre-repossession notice") by registered or certified mail at least ten (10) days before the repossession.

7. Condor Capital's routine business practice is to send its CLEC customers form notices of the repossession after the repossession ("redemption notice"), form notices of the plan to sell ("pre-sale notice") and form notices of the claimed deficiency ("post-sale notice") after the sale in which it demands payment.

8. If Condor Capital is not able to make payment arrangements with its customer which it regards as satisfactory, it pursues collection action, including filing suit against Condor Capital customers.

9. Through its failure to provide pre-repossession notices and the use of deficient form redemption, pre-sale and post-sale notices, Condor Capital has deprived its CLEC customers of valuable rights mandated by law.

10. Condor Capital violated Maryland law by: (1) inaccurately disclosing the amount of money required to redeem; (2) requiring class members to call Condor Capital to receive a redemption pay-off amount; (3) failing to provide the location where property was stored; (4) failing to provide a location where payments could be made; (5) inaccurately disclosing the time of sale; (6) failing to disclose the place of sale; (7) failing to mail pre-sale notices by certified mail; and (8) affirmatively representing to class members that Condor Capital was entitled to a deficiency balance, which in fact, class members did not owe and Condor Capital could not collect.

11. As a result of Condor Capital's acts and omissions, Maryland law prohibits Condor Capital from collecting any alleged deficiency which remains after sale of the repossessed vehicle. Maryland law also enables Named Plaintiff and the Class to seek and recover compensatory damages, statutory penalties and damages, and declaratory and injunctive

relief. Condor Capital's violations of Maryland law have enriched Condor Capital unfairly at the expense of Maryland borrowers, a practice this suit seeks to end.

12. Condor Capital's failure to provide pre-repossession notices, the use of deficient form redemption, pre-sale and post-sale notices which omit material information required by Maryland law and which also affirmatively misrepresents required information makes this case particularly suitable for resolution through a class action lawsuit.

## II. JURISDICTION

13. This Court has jurisdiction over this case under Md. Code Ann., Cts. & Jud. Proc. § 1-501.

14. This Court has personal jurisdiction over Condor Capital pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-103(1)-(3), as Condor Capital systematically and continually transacts business in Maryland, the case arises out of a transaction that took place within Maryland, Condor Capital contracts to supply good or services in Maryland, repossesses vehicles in Maryland and files lawsuits in Maryland's State Court System.

15. Venue is proper because Condor Capital carries on a regular business in Baltimore City, the facts underlying this action arose in Baltimore City and, because Condor Capital does not maintain a principle place of business within the state of Maryland, venue is appropriate in Baltimore City because Brooks resides in Baltimore City.

## III. PARTIES

16. Plaintiff Brooks is a natural person currently residing at 3704 Ravenwood Avenue, Baltimore, MD 21218.

17. Defendant Condor Capital is a New York corporation doing business within this state and with its principle place of business located at 800 South Oyster Bay Road, P.O. Box 9054, Hicksville, NY 11802-9054.

IV. <u>FACTUAL ALLEGATIONS</u>

18. On or about May 28, 2005, Brooks purchased a 2005 Chrysler 300C from Musselman's Dodge, Inc.

19. Brooks obtained financing for the purchase of the 2005 Chrysler through the dealership that sold him the vehicle, Musselman's Dodge, Inc., which was memorialized in a Retail Installment Sale Contract ("RISC") (attached hereto as **EXHIBIT 1**).

20. The RISC affirmatively elects to be governed under Subtitle 10 of Title 12 of the Commercial Law Article (i.e. Maryland's Credit Grantor Closed End Credit Provisions – hereafter "CLEC").

21. Brooks purchased the 2005 Chrysler primarily for personal, family and household purposes.

22. The RISC by which Brooks financed his purchase was assigned to Condor Capital, which accepted the contract and received monthly payments from Brooks.

23. As part of the May 28, 2005 transaction, Condor Capital took a lien and security interest on the 2005 Chrysler.

24. Condor Capital and/or its agents seized and repossessed the 2005 Chrysler on or before August 6, 2007.

25. Brooks did not receive any pre-repossession notices by registered or certified mail at least ten (10) days before the repossession.

26. Condor Capital then wrote to Brooks on September 6, 2007 demanding money and telling him that the 2005 Chrysler would be sold unless he redeemed his contract. *See* Redemption Notice (attached hereto as **EXHIBIT 2**).

27. Condor Capital again wrote to Brooks on October 13, 2009, requiring accelerated and full payment of the outstanding balance on the loan and partially stating the time and place the 2005 Chrysler would be sold. *See* Pre-Sale Notice (attached hereto as **EXHIBIT 3**).

## V. CLASS ACTION ALLEGATIONS

28. Named Plaintiff brings this action on behalf of a Repossession Class which consists of:

> **All persons whose vehicles were repossessed by Condor Capital in connection with a credit contract governed by CLEC.**

Excluded from the Class are: (a) those individuals who now are or have ever been executives of the Defendant and the spouses, parents, siblings and children of all such individuals

29. The Class, as defined above, is identifiable. The Named Plaintiff is a member of the Class.

30. The Class consists, at a minimum, of several hundred (and likely thousands) of persons who entered into credit contracts directly with or that were assigned to Condor Capital and whose vehicle was subsequently repossessed, and is thus so numerous that joinder of all members is clearly impracticable.

31. There are questions of law and fact which are not only common to the Class but which predominate over any questions affecting only individual class members. The common and predominating questions include, but are not limited to:

6

(a) Whether Condor Capital failed to provide pre-repossession notices compliant with CLEC § 12-1021(c) and (d) to borrowers whose vehicles were repossessed;

(b) Whether Condor Capital failed to provide redemption notices required by and compliant with CLEC § 12-1021(e)(1) and (h)(1) to borrowers whose vehicles were repossessed;

(c) Whether Condor Capital failed to provide pre-sale notices required by and compliant with CLEC § 12-1021(e)(1) and (h)(1) to borrowers whose vehicles were repossessed;

(d) Whether Condor Capital failed to provide redemption notices required by and compliant with CLEC § 12-1021(h)(3);

(e) Whether Condor Capital failed to provide pre-sale notices required by and compliant with CLEC § 12-1021(e)(3);

(f) Whether Condor Capital failed to provide pre-sale notices required by and compliant with CLEC § 12-1021(j)(1)(ii);

(g) Whether Condor Capital failed to provide pre-sale notices required by and compliant with CLEC § 12-1021(j)(1)(ii) by certified mail;

(h) Whether Condor Capital knowingly violated CLEC provisions and therefore should be required to forfeit three times the amount of interest, fees and other charges collected in excess of those allowed by CLEC;

(i) Whether Condor Capital misrepresented in writing to the Class the Defendant's right to collect funds from members of the Class;

(j) Whether Condor Capital misrepresented in writing to the Class its right to accelerate payments and require payment in full in order for Class members to redeem their credit contracts;

(k) Whether Condor Capital breached the class credit contracts for each Class member by failing to comply with CLEC;

(l) Whether Condor Capital assessed, attempted to collect and/or collected deficiency balances from members of the Class that it had no legal right to demand or collect, and for which the Class members were not liable; and

(m) Whether declaratory and injunctive relief is proper to prevent Condor Capital from continuing to seek deficiency judgments in violation of CLEC and to compel Condor Capital's compliance with CLEC.

32.     Claims of Named Plaintiff are typical of the claims of the respective members of the Class within the meaning of Md. Rule 2-231(a)(3), and are based on and arise out of similar facts constituting the wrongful conduct of Condor Capital.

33.     Plaintiff will fairly and adequately protect the interests of the Class within the meaning of Md. Rule 2-231(a)(4). Plaintiff is committed to vigorously litigating this matter. Further, Plaintiff has secured counsel experienced in handling consumer class actions and complex consumer litigation.

34.     Neither Plaintiff nor her counsel has any interests which might cause them not to vigorously pursue this claim.

35.     The prosecution of separate actions by individuals members of the Class would create a risk of establishing incompatible standards of conduct for Condor Capital within the meaning of Md. Rule 2-231(b)(1)(A).

36.     Condor Capital's actions are generally applicable to the respective Class as a whole, and Plaintiff seeks equitable remedies with respect to the Class as a whole within the

meaning of Md. Rule 2-231(b)(2).

37. Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class and a class action is the superior method for fair and efficient adjudication of the controversy within the meaning of Md. Rule 2-231(b)(3).

38. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

39. Plaintiffs' counsel is experienced in class actions, and foresees little difficulty in the management of this case as a class action.

## VI. CAUSES OF ACTION

### COUNT ONE
### (MARYLAND CREDIT GRANTOR CLOSED END CREDIT PROVISIONS)

40. Brooks re-alleges and incorporates by reference the allegations set forth above, and further alleges:

41. Maryland's Credit Grantor Closed End Credit Provisions ("CLEC"), Md. Code Ann., Comm. Law §§ 12-1001, *et seq.*, restricts credit grantors such as Condor Capital from collecting any fees, charges or interest not specifically provided for under a closed end credit contract or not specifically provided for under CLEC.

42. When a credit grantor fails to provide the required notices and the information that is required to be contained there within with respect to repossession of a motor vehicle, the credit grantor must not only forfeit all interest charges, fees and other charges with respect to the loan, but also is not entitled to a deficiency judgment against a consumer.

43. In violation of CLEC, Condor Capital failed to provide Named Plaintiff and the Repossession Class with the required notices and information that must be contained there within

9

after repossessing their vehicles, including but not limited to:

 a. inaccurately disclosing the amount of money required to redeem;

 b. requiring class members to call to receive a redemption pay-off amount;

 c. failing to provide the location where property was stored;

 d. failing to provide a location where payments could be made;

 e. inaccurately disclosing the time of sale;

 f. failing to disclose the place of sale;

 g. failing to mail the pre-sale notices to class members by certified mail; and

 h. affirmatively representing to class members that Condor Capital was entitled to a deficiency balance, which in fact, class members did not owe and Condor Capital could not collect.

44. Condor Capital knowingly engaged in these violations of CLEC, § 12-1021.

## COUNT TWO
## (BREACH OF CONTRACT)

45. Brooks re-alleges and incorporates by reference the allegations set forth above, and further alleges:

46. CLEC was in effect at the time Named Plaintiff and all other Class Members' credit contracts were signed and Condor Capital specifically and unequivocally elected CLEC as the controlling law in its credit contracts with Named Plaintiff and all Class Members and incorporated the CLEC statute into the credit contracts. The provisions of the CLEC statute become a part of the contracts just as if the parties expressly included the CLEC provisions in their credit contracts.

47. When Condor Capital violated CLEC as set forth above, Condor Capital

materially breached its contracts with Named Plaintiff and the Repossession Class.

48. As a result of Condor Capital's breach of contract with Named Plaintiff and the Repossession Class, Named Plaintiff and the Repossession Class have been damaged.

49. Named Plaintiff and the Repossession Class have been deprived of the substantial rights granted to them by CLEC and under their contracts as set forth above.

50. In addition, Named Plaintiff and the Repossession Class also sustained financial damages as a result of Condor Capital's failure to return all of the interest, costs, fees, insurance premiums and other charges collected on their loans, and Named Plaintiff and the Repossession Class sustained other damages and losses.

## COUNT THREE
## (MARYLAND CONSUMER PROTECTION ACT)

51. Brooks re-alleges and incorporates by reference the allegations set forth above, and further alleges:

52. Maryland's Consumer Protection Act ("CPA"), Md. Code Ann., Comm. Law §§ 13-101, *et seq.*, prohibits any "person" from engaging in any unfair or deceptive trade practices, *inter alia,* in the extension of consumer credit and in the collection of consumer debts. §§ 13-303(3) and (4).

53. As a "person" under the CPA, § 13-101(h), Condor Capital is prohibited from engaging in unfair and deceptive trade practices.

54. The CPA, § 13-301(1), specifically prohibits Condor Capital from making any false or misleading oral or written statement or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers.

55. The CPA, § 13-301(3), further prohibits Condor Capital from failing to state a

11

material fact if the failure deceives or tends to deceive.

56. In violation of the CPA, §§ 13-303(3) - (4) and § 13-301(1), Condor Capital told Named Plaintiff and the Repossession Class in writing that: (i) a certain amount of money was required to redeem when in fact redemption would have required a greater amount; (ii) the collateral would be sold at a specific time and that the Class member had a right to participate in the sale when in fact the collateral was routinely sold at a different time; (iii) the collateral would be sold at a specific location and that the Class member had a right to participate in the sale when in fact the collateral was routinely sold at a different location; (iv) Named Plaintiff and the Repossession Class owed it a deficiency balance which in fact, Named Plaintiff and the Repossession Class did not owe and which Condor Capital could not collect.

57. These written statements were false and misleading and tended to and did deceive Named Plaintiff and the Class who made payments to Condor Capital which were not due and owing.

58. In violation of the CPA, §§ 13-303(3) - (4) and § 13-301(3), Condor Capital failed to disclose to Named Plaintiff and the Repossession Class: (i) the amount of money required to redeem; (ii) the location where property was stored; (iii) a location where payments could be made; (iv) the time of sale; (v) the place of sale; (vi) any of the information required to be contained within a pre-sale notice that is sent by certified mail; (vii) that Condor Capital did not have the right to a deficiency judgment; and (viii) that Condor Capital did not have the right to collect on a deficiency judgment.

59. This failure to disclose material facts led Named Plaintiff and the Class to make payments which were not due and allowed Condor Capital to accept monies into each

Repossession class members' account which they would not have made or allowed Condor Capital to accept had Condor Capital informed them of the material facts.

60. Condor Capital committed unfair and deceptive practices by collecting and attempting to collect on an alleged debts which, in fact, were not due and this conduct constitutes unfair and deceptive trade practices in violation of the CPA, §13-101, *et seq.*, including §§ 13-303(3) and (4), and §§ 13-301(1) and (3).

61. Condor Capital's numerous violations of CLEC are *per se* unfair and deceptive practices.

62. As a result of Condor Capital's unfair and deceptive trade practices in violation of the CPA, Named Plaintiff and the Class were induced to make payments to Condor Capital on interest charges, insurance premiums and non-existent debts and allowed Condor Capital to collect funds that belonged to the Repossession Class, causing Named Plaintiff and the Class injury and loss.

### COUNT FOUR
### (DECLARATORY AND INJUNCTIVE RELIEF)

63. Brooks re-alleges and incorporates by reference the allegations set forth above, and further alleges:

64. This claim for declaratory relief is brought under the Maryland Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Pro. § 3-406, to settle and obtain relief from uncertainty and insecurity with respect to the rights, status and legal relations under the credit contracts of the Named Plaintiff and members of the Repossession Class and the consumer protections embodied in Maryland's Credit Grantor Closed End Credit Provisions.

65. Condor Capital maintains it may collect a deficiency balance from Named Plaintiff and members of the Repossession Class even though Condor Capital failed to provide Named Plaintiff and members of the Repossession with timely and accurate pre-repossession, redemption, pre-sale, post-sale and/or other notices required by Maryland's Credit Grantor Closed End Credit Provisions.

66. Named Plaintiff and members of the Repossession Class have received or will receive collection notices from Condor Capital and/or debt collectors demanding payment of the alleged deficiency balance, and have been sued or will be sued for collection of the sums which Condor Capital claims are due. Moreover, Condor Capital also notifies credit reporting agencies to which it reports (potentially including Equifax, TransUnion and Experian) of the alleged balances due, thereby damaging the credit scores and credit history of Named Plaintiff and the Repossession Class.

67. These practices will continue unless and until this Court declares and affirms that Condor Capital may not collect any alleged deficiency balance unless Condor Capital has provided Named Plaintiff and members of the Repossession Class with timely pre-repossession, redemption, pre-sale, post-sale and/or other required notices containing the information whose disclosure is mandated by CLEC, § 12-1021.

68. This presents an actual, judicable controversy between the parties relating to the construction of the credit contract of Named Plaintiff and members of the Repossession Class and the application of Maryland's Credit Grantor Closed End Credit Provisions to those contracts because Condor Capital has sought or likely will seek to collect on the alleged deficiency balances, including through filing a collection action in court, and Condor Capital continues to harm Named Plaintiff and members of the Repossession Class by reporting false

and derogatory information to credit reporting agencies regarding the accounts in question.

69. Named Plaintiff and members of the Repossession Class have a right to be free from Condor Capital's attempts to collect deficiency balances, interest, fees, costs and other charges which are not collectible as a matter of law under the terms of its contracts with Named Plaintiff and members of the Repossession Class.

70. The benefits to Named Plaintiff and members of the Repossession Class in obtaining an injunction outweigh any potential harm Condor Capital would incur as a result of an injunction, under the balance of convenience test, as Condor Capital has no legal or contractual right to collect deficiency balances from Named Plaintiff and members of the Repossession Class, and Named Plaintiff and members of the Repossession Class would greatly benefit from being relieved of Condor Capital's attempts to collect these illegal charges.

71. Named Plaintiff and members of the Repossession Class will suffer irreparable injury unless the requested injunctions are granted, as Condor Capital will continue to attempt to collect, and will collect, deficiency balances, interest, costs, fees and other charges from them in violation of the law, and Condor Capital will report erroneous and derogatory information to the credit reporting agencies regarding Named Plaintiff and members of the Repossession Class based on the illegally imposed charges.

72. The public interest is best served by granting the requested injunctions, as the public has a compelling interest in preventing Condor Capital from violating the statutory and common law of the State of Maryland in its repossession and/or collection practices, and a compelling interest in seeing the laws of the State of Maryland obeyed.

73. Named Plaintiff and members of the Repossession Class are likely to succeed on the merits of this action, as CLEC explicitly requires that Condor Capital send specific and

mandatory pre-repossession, redemption, pre-sale, post-sale and/or other notices containing information mandated by CLEC that comply with the statute to Named Plaintiff and members of the Repossession Class. Condor Capital did not send such timely and accurate notices.

## COUNT FIVE
### (RESTITUTION AND UNJUST ENRICHMENT)

74. Brooks re-alleges and incorporates by reference the allegations set forth above, and further alleges:

75. By paying money on deficiency balances, interest, late fees, other fees, costs and other charges claimed by Condor Capital, Named Plaintiff and members of the Class conferred a benefit of these illegally collected charges upon Condor Capital.

76. Condor Capital accepted the benefits conferred upon them by Named Plaintiff and members of the Class when they accepted the money paid toward illegally assessed deficiency balances, interest, costs, late fees, other fees and other charges.

77. Further, Condor Capital was aware of, and had knowledge of, the benefits conferred on them, as it demanded those benefits.

78. By paying money toward interest, fees, costs and other charges on their accounts before and after repossession, Named Plaintiff and members of the Class conferred a benefit on Condor Capital.

79. Condor Capital accepted the benefits conferred upon them by Named Plaintiff and members of the Class when they accepted the money paid toward interest, fees, costs and other charges.

80. Further, Condor Capital was aware of, and had knowledge of, the benefits conferred on them, as it demanded those benefits.

81. Condor Capital's collection, acceptance and retention of these charges, when

Condor Capital was not entitled to the charges as a matter of law, is and was and continues to be unjust and inequitable, and Condor Capital has not refunded the charges to Named Plaintiff and members of the Class.

82. Condor Capital should not be permitted to retain the benefits of those illegal charges. Condor Capital's continued withholding of the charges is improper.

83. Named Plaintiff and members of the Class conferred these unjust benefits upon Condor Capital in part as a result of Condor Capital's misconduct as set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

A. Assume jurisdiction of this case;

B. The Court enter a declaratory judgment establishing that Condor Capital may not collect any claimed deficiency balance, or any interest, fees, costs or other charges on a loan account of Named Plaintiff and members of the Repossession Class;

C. The Court enter an order granting Named Plaintiff and members of the Repossession Class a preliminary and permanent injunction prohibiting Condor Capital from collecting or attempting to collect alleged deficiency balances, or interest, fees, costs or other charges from Named Plaintiff and members of the Repossession Class;

D. The Court enter an order requiring Condor Capital within 30 days to notify all credit reporting agencies to whom it reports that (i) Named Plaintiff and members of the Repossession Class have a zero balance on their accounts, and (ii) removing any notation to the effect that the account has been charged off;

Case 1:10-cv-01376-BEL   Document 2   Filed 05/28/10   Page 18 of 20

E. The Court enter an order certifying the Repossession Class under Md. Rule 2-231(b)(2) and (b)(3).

F. Order that Condor Capital pay to Named Plaintiff and the Repossession Class the statutory penalties imposed by CLEC, § 12-1018, by returning to Named Plaintiff and the Class all sums paid as interest, costs, fees or other charges ($10,000,000);[1]

G. Pursuant to CLEC, § 12-1018, enter judgment in favor of Named Plaintiff and the Repossession Class against Condor Capital in an amount of three times the interest, costs, fees, and other charges which Condor Capital collected in excess of that allowed by CLEC ($30,000,000);

H. Order that due to its violations of CLEC, § 12-1021, Condor Capital cannot collect the principal amount of the loan;

I. Award Named Plaintiff and members of the Class actual damages and reasonable attorney's fees in accordance with CPA, §§ 13-408.

J. Enter judgment in favor of Named Plaintiff and members of the Class against Condor Capital for such compensatory damages as the evidence shall warrant;

K. Enter an award of pre-judgment and post-judgment interest on all sums awarded to Named Plaintiff and members of the Class; and

L. Award such other relief as the court deems appropriate.

---

[1] This number is an estimate based on an assumption that the Repossession Class consists of 1,000 members and that each member has CLEC damages averaging $10,000.00. Plaintiff will amend the Class Action Complaint to reflect a more specific amount after some discovery.

Respectfully submitted,

Z LAW, LLC

Dated: December 30, 2009    By: _____
Cory L. Zajdel, Esq.
8830 Orchard Tree Lane, Suite 117
Towson, Maryland 21286
(443) 632-3010

**Attorneys for Plaintiff and the Class**

## **JURY TRIAL**

Named Plaintiff on behalf of himself and all others similarly situated demands trial by jury.

_____
Cory L. Zajdel